QUESTION: At what election should the vacancy in office, if any, be filled when the term of office of a criminal court of record judge serving as a circuit court judge under Art. V, s. 20(d)(2), State Const., expires on January 6, 1975, and when the term of office of a municipal court judge serving as a county court judge under s. 20(d)(5), id., expires on June 30, 1975?
SUMMARY: The county and circuit court judgeships created by the legislature in 1972 and 1973 under the authority of Art. V, ss. 9 and 20(d)(5), State Const., which are presently being served by "temporary tenure" judges whose elective terms will expire after the 1974 judicial election and before the 1976 judicial election, should be filled by election in the 1974 judicial election for four and six-year terms, respectively, that begin on the first Tuesday after the first Monday in January 1975. The elected successor may not, however, assume the duties of the office until a corporeal vacancy occurs upon the expiration of the term of the temporary tenure judge. As background information, it may be well to repeat what has been said in previous opinions of this office in answering somewhat similar questions: In establishing a new two-tiered judicial system at the trial level, the framers of revised Article V adopted the policy of preserving for elected judges whose courts were abolished the right to serve out the remainder of their elective terms either as circuit or county court judges. Article V, ss. 20(d)(2) and (5), State Const. Unless created by the legislature as additional permanent judgeships, these constitutional "temporary tenure" judgeships expired at the expiration of the terms of office to which they have been elected as judges of abolished courts. Under Art. V, s. 20(d)(6), the Supreme Court was required to certify to the legislature by March 21, 1972, the need for additional circuit and county court judges; and the legislature was authorized to create these additional judgeships, the terms of which began on the effective date of Art. V, January 1, 1973. The circuit and county court judgeships in question were created in 1972 by the legislature under the authority of Art. V, s. 20(d)(6), supra, as implemented by Ch. 72-402, Laws of Florida (s. 26.031, F.S.) and Ch. 72-406, id. (Section 34.022, id.). The circuit court judgeship is presently being filled temporarily by a criminal court of record judge whose term expires on January 6, 1975; and I have heretofore ruled in AGO's 072-143, 072-144, and 072-156 that successors to judges who are serving temporarily as circuit or county court judges for the remainder of elective terms which will expire prior to the first Tuesday after the first Monday in January 1975 should be elected at the nonpartisan judicial election in 1974 for the full term of the office, beginning on the first Tuesday after the first Monday in January 1975. Since those rulings were made, the Supreme Court has rendered two opinions — Advisory Opinion to the Governor,281 So.2d 328 (Fla. 1973), and State ex rel. Judicial Qualifications Com'n v. Rose, 286 So.2d 562 (Fla. 1973), concerning this type of judgeship. Accordingly, I have reconsidered the questions presented by you in the light of the opinions therein expressed. In its advisory opinion, the court was concerned with the question of the governor's appointive power to fill vacancies in certain additional county court judgeships created by the legislature in 1973 (Ch. 73-329, Laws of Florida, effective July 1, 1973). The court said that, originally, these were constitutional judgeships of temporary tenure that would have expired at the expiration of their elective terms, had they not been made permanent by the legislature in the 1973 act. In ruling that the governor's power of appointment to fill a vacancy that occurs upon the "creation of an office" was not activated by the designation of these constitutional temporary tenure judgeships as permanent judgeships, the court said that the 1973 statute did not create a vacancy; it "merely continued indefinitely the tenure of offices originally created pursuant to Fla. Const., Art. V, F.S.A." The court said also that, in view of the constitutional right of the temporary tenure judges to serve out the remainder of the terms to which they were elected, . . . the terms of such judges will expire at the same time as they would ordinarily expire in accordance with their original election. In other words, the affected county court judges of temporary tenure whose offices are made permanent by Ch. 73-329, Laws of Florida, shall hold office until the expiration of the original term to which they were elected, at which time the office should be filled by the elective process in accordance with law. (Emphasis supplied.) The court concluded that a "vacancy" as defined in Art. X, s. 3, supra, did not exist on July 1, 1973 (the effective date of the 1973 act) in the county court judgeships in question, and that the terms of office of these judgeships expire "at the time they would ordinarily expire in accordance with their original election." In the Rose case, the court ruled that Judge Rose had the right to serve as a temporary tenure circuit court judge for the remainder of the term to which he was elected as a court of record judge, even though he would ordinarily have been disqualified to serve as a circuit court judge after October 22, 1972, the date upon which he attained the age of seventy. (No such disqualification existed as to judges of the court of record to which he was elected.) The court said: Judge Rose was merged into a circuit judgeship by virtue of the language of revised Article V because he held a court of record judgeship at the time new Article V went into effect. Insofar as his tenure as a commissioned judge is concerned, he had the benefit of the constitutional protections provided his office at the time he was commissioned. . . . When considered in the light of these statements by the court, it seems clear that the framers of revised Article V intended to provide for a special sui generis type of judgeship during this transitional period — one which would preserve to an elected judge of an abolished court the right to serve out the remainder of his or her elected term as either a county or circuit court judge, as well as any "constitutional protections" to which he or she would have been entitled at the time of the original commission. One of these expectations — if not a constitutionally protected right — was the opportunity to run for reelection for a full term to the judicial office which was abolished by Art. V. And as stated by the court in its advisory opinion, the office should be filled "by the elective process in accordance with law" (Emphasis supplied.) upon the expiration of the term of the temporary tenure judge. The "elective process" provided by the Constitution, Art. VI, s. 5, for filling an office upon the expiration of a term reads as follows: A general election shall be held in each county on the first Tuesday after the first Monday in November of each even-numbered year to choose a successor to each elective state and county officer whose term will expire before the next general election. . . . Under s. 105.021, F.S., judges are now required to be elected at nonpartisan judicial elections held at the same time as the first and second primaries preceding the general election; however, as in the case of other state and county officers whose terms of office begin on the first Tuesday after the first Monday in January, they are elected at the preceding election in an even-numbered year. There is nothing in revised Article V, or the implementing legislation, which expressly requires the elected successors to the temporary tenure judges to be elected for anything less than the full term of the office; and, to be consistent with the Supreme Court's advisory opinion and its ruling in the Rose case, I have the view that the constitutional and statutory provisions here applicable should be so interpreted. This view is also consistent with Art. V, s. 11, requiring elected successors to persons appointed to fill vacancies in judicial office to be elected for the full term of the office. Attorney General Opinion 072-143. In sum: A successor to a "temporary tenure" county or circuit court judge who is serving an elective term that will expire after the 1974 judicial election and before the 1976 judicial election should be selected at the 1974 judicial election for a four or sixyear term that begins on the first Tuesday after the first Monday in January 1975. Section 100.041(1), F.S.; Art. V, s. 15, State Const., now having the force and effect of a statute under s. 20(e)(g) of Art. V. However, as noted in the Advisory Opinion, supra, a "corporeal" vacancy in the office will not occur until the expiration of the term of the temporary tenure judge; thus, the elected incumbent may not assume the duties of the office until the term of the temporary tenure judge expires. As so interpreted, the "Schedule" provisions of Article V will have the effect of cutting short, during the transition to the new two-tiered trial court system, the terms of the first elected incumbents of the additional judgeships in question. However, those persons who qualify for and are elected to the office will do so under the conditions prescribed by the Constitution and must be charged with knowledge thereof. Cf. AGO 072-410, with reference to county commissioners whose terms were shortened by the change in the beginning of the term from January 1973 to November 1972. It might be noted that this interpretation of the applicable provisions of the Constitution is not only in accord with the Supreme Court's advisory opinion and the Rose opinion, supra; it is also consistent with the provision of the schedule relating to the right of temporary tenure judges to succeed themselves in the offices in which they are serving temporarily, thereby avoiding a break in their own judicial tenure. See s. 20(d)(2) of Art. V, supra, providing that the judges of certain courts abolished by Art. V
. . . if their terms do not expire in 1973 and if they are eligible under subsection (d)(8) hereof, shall become additional judges of the circuit court for each of the counties of their respective circuits, and shall serve as such circuit judges for the remainder of the terms to which they were elected and shall be eligible for election as circuit judges thereafter. . . . (Emphasis supplied.) The language last italicized cannot be interpreted to mean that these judges are deemed to be qualified to run for and hold the office of circuit judge under subsection 20(d)(8) of Art. V — which requires a circuit judge to have been a member of The Florida Bar for the preceding five years — as the clause first italicized expressly requires them to be so qualified. And the italicized provision can only have meaning if interpreted as contemplating the election of the successor to the temporary tenure judge, and as making clear that a temporary tenure judge could qualify, along with other candidates, for election to the office, even though he was already authorized under the Constitution to serve a portion of the elected term as a temporary tenure judge. Although a temporary tenure judge would have to win the approval of the electorate at the polls in order to succeed himself in the office, the importance of the opportunity to avoid a break in the continuity of this judicial service — for the purpose of membership in the Florida Retirement System, if for no other reason — is obvious. I am advised by a distinguished member of the 1971 House Committee on the Judiciary, the Honorable Talbot D'Alemberte, who participated actively in the revision of Article V that this was the intent of the framers of the revision. While this intent could not be given effect over a clear constitutional or legislative mandate to the contrary, it confirms what appears to be the only possible interpretation of that portion of s. 20(d)(2) of Article V, quoted above. (No question was presented and no opinion is expressed as to the impact of the Supreme Court decisions referred to above on the opinion expressed in AGO 072-156 concerning the filling of a vacancy that was assumed to occur when a temporary tenure judgeship expires after the September 1974 judicial election and before the beginning of the elected term of the successor on the first Tuesday after the first Monday in January 1975.)